IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Clarendon National Insurance Company, *successor by merger to Sussex Insurance Company f/k/a Companion Specialty Insurance Company* | * * * * * | |
| v. | * * | Civil Action No. 19-3527 |
| Dan Ryan Builders, Inc., *et al.* | * | |

**MEMORANDUM**

This is a declaratory judgment action brought by Clarendon National Insurance Company against Dan Ryan Builders, Inc. ("DRB")/Dan Ryan Builders West Virginia ("DRB WV"),[1] and Dan Ryan Builders South Carolina, LLC ("DRB SC"), (collectively, "Dan Ryan"), regarding coverage under several insurance policies. Now pending are Dan Ryan's motion to dismiss for failure to join indispensable parties (ECF 15) and motion to transfer venue (ECF 16). For the reasons stated below, the court will deny the motion to dismiss and deny without prejudice the motion to transfer venue.

**FACTS AND PROCEDURAL HISTORY**

Clarendon's predecessor, Companion Specialty Insurance Company, issued insurance policies to Dan Ryan Builders, Inc. (between 2010–2012) and DRB Enterprises, Inc. (between 2012–2013), along with accompanying excess policies. (Compl. ¶¶ 18, 19, 32–34). The policies were issued to DRB and DRB Enterprises at their Maryland addresses. (*Id.* ¶¶ 18,19; ECF 29-2, Policy Declarations). The defendants are named insureds under the policies. (Compl. ¶¶ 20–21).

Dan Ryan constructed new homes in the Foxbank subdivision of Berkeley County, South Carolina, (*id.* ¶ 38), and sold at least 19 homes, (*id.* ¶ 40). In 2014 and 2017, two separate

---

[1] Dan Ryan Builders West Virginia, LLC, is "a continuation by statutory conversion of Dan Ryan Builders, Inc." (Compl. ¶ 4).

1

lawsuits were filed against Dan Ryan (the "underlying lawsuits"), which were later consolidated and are currently pending in South Carolina state court. (*Id.* ¶¶ 43–45). The engineering company that provided engineering services for the building of the homes, Volkmar Consulting Services, LLC and the owner Thomas Volkmar, are also defendants in the underlying lawsuits. (*Id.* ¶ 50–52). The underlying lawsuits regard alleged construction defects.

Clarendon agreed to defend Dan Ryan in the underlying lawsuits "under a complete 'reservation of rights,'" (*id.* ¶ 64), including that to the extent damages were based on the rendering or failure to render professional services, damages would be excluded under the professional liability exclusion endorsement, (*id.* ¶ 66). On June 21, 2019, Clarendon filed a motion for limited intervention in the underlying lawsuits for the purposes of submitting and participating in the preparation of jury instructions, special interrogatories, and special jury verdict forms that would address factual issues related to Clarendon's indemnity coverage, (*id.* ¶¶ 69–70), but that motion was denied, (*id.* ¶ 72).

On September 3, 2019, Dan Ryan and plaintiff homeowners (through counsel) in the underlying lawsuits signed a Covenant Not to Execute. (*Id.* ¶ 74). The covenant was signed on behalf of Dan Ryan by Paul Yeager. (*Id.* ¶ 73). This covenant states that if Clarendon fails to pay any judgment against Dan Ryan in the underlying lawsuits, the agreement constitutes an actuating, automatic assignment of Dan Ryan's policy rights under the Clarendon policies. (*Id.* ¶ 75).

Clarendon seeks declaratory judgments stating that 1) it has no duty to indemnify Dan Ryan because of the professional liability exclusion endorsement (Count I); 2) it has no duty to indemnify Dan Ryan because of the punitive or exemplary damages exclusion endorsement (Count II); 3) it has no duty to indemnify Dan Ryan for damages that occurred outside of the

policy periods (Count III); 4) Dan Ryan breached three provisions in the insurance policies by entering the Covenant Not to Execute and Clarendon therefore has no duty to indemnify Dan Ryan (Counts IV, V, and VI), and; 5) to the extent Dan Ryan has a duty to indemnify, portions of damages falling under the above exclusions are not covered. Dan Ryan has counterclaimed, alleging the tort of bad faith, breach of the implied covenant of good faith and fair dealing, and breach of contract.

## DISCUSSION

I.  Motion to Dismiss for Failure to Join Indispensable Parties

Dan Ryan argues that the plaintiff homeowners (referred to as the "Foxbank plaintiffs") are necessary and indispensable parties to this action, and that Maryland does not have personal jurisdiction over them. Under Federal Rule of Civil Procedure 19, the court engages in a two-step inquiry to determine whether a party must be joined in an action. First, "the district court must determine whether the party is 'necessary' to the action under Rule 19(a)." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). "If the court determines that the party is 'necessary,' it must then determine whether the party is 'indispensable' to the action under Rule 19(b)." *Id.* If a necessary and indispensable party cannot be joined, the case should be dismissed, but dismissal "is a drastic remedy . . . which should be employed only sparingly." *Id.* at 250 (citation omitted). "In determining whether to dismiss a complaint, a court must proceed pragmatically, 'examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it.'" *Id.* (citation omitted).

A.  Whether the Foxbank plaintiffs are necessary parties

A party is necessary if, "in that person's absence, the court cannot accord complete relief among existing parties; or" "that person claims an interest relating to the subject of the action" and the person's absence may "impair or impede the person's ability to protect the interest" or leave "an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations[.]" Fed. R. Civ. P. 19(a)(1).

Dan Ryan argues that the Foxbank plaintiffs have an interest in the insurance coverage dispute between Clarendon and Dan Ryan, while Clarendon argues that because the Foxbank plaintiffs have no judgment against Dan Ryan yet, "the potential interests of the parties in the state court action simply do not rise to the level of a protectible interest as required by Rule 19." *Black Diamond Girl Scout Council, Inc. v. St. Paul Fire & Marine Ins. Co.*, 621 F. Supp. 96, 98 (S.D.W. Va. 1985).

There is some uncertainty whether the Foxbank plaintiffs, who do not yet have a judgment or settlement with Dan Ryan, have a protectable interest in this litigation. *See Zurich Am. Ins. Co. v. Covil Corp.*, No. 1:18-CV-932, 2019 WL 3205676, at *4 n.8 (M.D.N.C. July 16, 2019)[2] (noting a potential inconsistency between the Fourth Circuit case *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991), although regarding a motion to intervene as a matter of right, and *Black Diamond*.). In *Zurich*, the court noted that "[w]hen an insurer brings a declaratory judgment action against its insured, the underlying claimants are usually, but not always, necessary parties to the insurance dispute." *Id.* at *5.[3]

---

[2] Unpublished decisions are cited for the soundness of their reasoning, not for any precedential value.
[3] In *Zurich*, though, the court found that because other underlying claimants were already joined as parties, the underlying claimants not joined would still have their interests adequately protected. *Id.* at *5. Clarendon cites to *Allied World Surplus Lines Ins. Co. v. Day Surgery Ltd. Liab. Co.*, but that case is distinguishable. There, the insurance company filed a declaratory judgment against its insured and the underlying claimants, and the question was whether additional insureds who did not seek coverage under the policy were necessary and indispensable parties. No. 2:17-CV-04286, 2019 WL 3403901, at *1, *3.

A district court has recently stated that "[t]he majority of courts have held under Rule 19(a) that an injured party 'generally is a necessary party in a declaratory judgment action brought to determine the insurance coverage for the claim.'" *Colony Ins. Co. v. Vantaggio Farming Corp.,* No. 117-CV-00714-LJO-SKO, 2017 WL 3478998, at *4 (E.D. Cal. Aug. 14, 2017) (citation omitted, and collecting cases). Here, the court will assume, without deciding, that the Foxbank plaintiffs are necessary parties.

B.  Whether the Foxbank plaintiffs are indispensable

Rule 19 provides that if a person cannot be joined, the court should determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The court should consider "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties"; "the extent to which any prejudice could be lessened or avoided"; "whether a judgment rendered in the person's absence would be adequate"; and "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.*

Dan Ryan argues that the court would not have personal jurisdiction over the Foxbank plaintiffs so they cannot be joined. In *Ranger Ins. Co. v. United Hous. of New Mexico, Inc.*, 488 F.2d 682 (5th Cir. 1974), to which Dan Ryan cites, the Fifth Circuit held that the underlying claimants were necessary and indispensable parties to a coverage action between the insurer and the insured because a judgment could prejudice the underlying claimants. *Id.* at 683–84. There, the underlying claimants could not be joined because they would destroy diversity subject matter jurisdiction. *Id.* at 683. But personal jurisdiction, unlike subject matter jurisdiction, can be waived. In fact, the Fifth Circuit later distinguished *Ranger* in *Fed. Ins. Co. v. Singing River Health Sys.*, regarding the joinder of underlying claimants in an insurance coverage dispute, by

stating that in *Ranger*, "the plaintiffs could not intervene in the federal action because their presence would divest the court of diversity jurisdiction. By contrast, here, the plaintiffs can intervene because they are diverse. Accordingly, plaintiffs have means to protect their interest." 850 F.3d 187, 201 (5th Cir. 2017) (citation omitted). Other circuits also have found that the possibility of intervention is a permissible consideration in deciding whether a party is indispensable. *See Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005) (collecting cases); Fed. R. Civ. P. 19, advisory committee notes ("So also the absentee may sometimes be able to avert prejudice to himself by voluntarily appearing in the action or intervening on an ancillary basis. . . The court should consider whether this, in turn, would impose undue hardship on the absentee.").

Here, it appears the Foxbank plaintiffs can intervene without destroying subject matter jurisdiction, and neither party states anything to the contrary.[4] Although the court notes that this might pose hardship to the Foxbank plaintiffs, it must balance this against the drastic remedy of dismissal. The judgment rendered in the Foxbank plaintiffs' absence would be adequate, as this coverage dispute only concerns the contract entered into between Clarendon and Dan Ryan. And although Dan Ryan argues that they might be subject to inconsistent rulings, the underlying state court action does not concern insurance coverage, and there appears to be no other pending actions regarding indemnity coverage under these insurance policies. Therefore, it appears there is minimal potential for inconsistent rulings.[5]

II.     Motion to Transfer Venue

---

[4] The court does not decide at this point whether the Foxbank plaintiffs meet the requirements for intervention.
[5] The court acknowledges that there is a possibility for inconsistent factual determinations. But because Clarendon was denied intervention in the underlying case, any coverage action will necessarily be resolved in a separate case, and it appears this would always carry with it the risk of inconsistent factual determinations, whether the separate case is in South Carolina or in Maryland. Similarly, as to the "waste of judicial resources in having multiple proceedings," (ECF 15-1, Mot. at 8–9), it appears there will be two proceedings (the underlying case and this coverage action) regardless, since Clarendon was denied intervention in the underlying case.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In deciding whether to transfer venue, the district court should consider four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "In a motion pursuant to § 1404(a), the burden is on the moving party to show that transfer to another forum is proper." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

A.  Where case could have originally been brought

"To establish that an action could have been brought in the proposed transferee district, the movant must show that the district is a proper venue and that the transferee court would have personal jurisdiction over the defendant." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009). Clarendon argues that South Carolina may not have personal jurisdiction over DRB/DRB WV. Dan Ryan argues that because DRB has instituted two related lawsuits in South Carolina state courts, that is strong evidence that there is personal jurisdiction in South Carolina.

"When a federal court sits in diversity,[6] it 'has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process.'" *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted). "Because the scope of South Carolina's long-arm statute is coextensive with the Due Process Clause," the court need only address

---

[6] The jurisdictional basis here is diversity jurisdiction. (Compl. ¶ 14).

constitutional due process. *ESAB Grp., Inc. v. Zurich Ins*. PLC, 685 F.3d 376, 391 (4th Cir. 2012). To determine whether it has specific personal jurisdiction,[7] a court uses the "minimum contacts" test, considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods*, 814 F.3d at 189 (citation omitted).

The court takes judicial notice that DRB filed a declaratory judgment action in South Carolina state court regarding the same insurance policies at issue in this case. *See* Complaint, Case No. 2014CP0800892 (Berkley County Court of Common Pleas, April 25, 2014);[8] *see also* ECF 34-1, Aff. of Joshua F. Evans ¶ 6. DRB also filed a lawsuit against the insurer of the subcontractors for the Foxbank development in the U.S. District Court for the District of South Carolina on March 1, 2018. *See Dan Ryan Builders W. Virginia, LLC v. Main St. Am. Assurance Co.*, --- F. Supp. 3d ----, No. 2:18-CV-00589-DCN, 2020 WL 1668853 (D.S.C. Apr. 3, 2020).

Dan Ryan states that the fact that DRB has instituted related proceedings in South Carolina is "strong evidence" that South Carolina has personal jurisdiction over DRB/DRB WV in this action, but provides nothing to support that view. The court notes that even if this constitutes purposeful availment, Dan Ryan has not demonstrated that "the plaintiffs' claims arise out of those activities directed at the State." It does not appear that this declaratory judgment action arises out of the lawsuits that DRB has brought in South Carolina. Therefore,

---

[7] General personal jurisdiction requires "'continuous and systemic' contacts with the forum state," *Perdue Foods*, 814 F.3d at 188 (citation omitted), which there is no contention that DRB/DRB WV has with South Carolina.
[8] "The court may . . . take judicial notice of matters of public record." *Alston v. Eberwein Grp., LLC*, No. CV TDC-17-3278, 2019 WL 454103, at *2 (D. Md. Feb. 5, 2019)

the plaintiff has not met its burden to show that the action could have been brought in South Carolina.⁹

Nevertheless, and because it appears that DRB/DRB WV may be able to provide additional facts indicating that South Carolina does have personal jurisdiction over it with respect to this action, the court will address the other § 1404(a) factors.

B. Plaintiff's choice of venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Trustees of the Plumbers & Pipefitters Nat. Pension Fund*, 791 F.3d at 444 (citation omitted). "The level of deference to a plaintiff's forum choice 'varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (citation omitted).

Dan Ryan argues that Clarendon's choice of Maryland should be entitled to little weight because Clarendon does not reside in Maryland. They cite to *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, which gave the presumption favoring the plaintiffs' chosen forum little weight both because the chosen forum was not the plaintiffs' home forum and because there was no connection between the forum and the operative facts of the case. 357 F. Supp. 2d 924, 936 (E.D. Va. 2005). They also cite to *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, which found that the "plaintiffs' choice of forum is entitled to significantly diminished weight" when the plaintiffs did not reside in the forum nor did the forum have a special connection to the facts of

---

⁹ The court notes that the underlying complaints indicate that DRB/DRB WV had some involvement in the Foxbank development, and that such contacts could form the basis of specific personal jurisdiction. But even if this is true, Dan Ryan has "the burden to present legal arguments in the first instance," and it does not argue personal jurisdiction based on its involvement with the Foxbank development. *See Wootten v. Commonwealth of Virginia*, 168 F. Supp. 3d 890, 895–96 (W.D. Va. 2016).

9

the case. 418 F. Supp. 2d 164, 170 (E.D.N.Y. 2006). Here, Maryland has a connection to the facts of this case because the insurance policies were issued in Maryland.[10] Further, defendant DRB/DRB WV is located in Maryland, as is Paul Yeager, who signed the covenant not to execute on behalf of Dan Ryan. Because Maryland has a sufficient connection to the facts of this case, the court will not depart from the general rule that a plaintiff's choice of forum is given substantial weight.[11]

C. Witness convenience and access

Dan Ryan states that many South Carolina residents may have to testify in this action, including: Lee Mackin (project superintendent) and other employees of DRB SC, Clarendon's counsel it hired in the underlying action, the homeowner's expert, and the Foxbank plaintiffs. Dan Ryan also notes that these witnesses are beyond the court's subpoena power, business records and evidence are located in South Carolina, and video depositions are not as effective as live testimony before a jury.

Nearly all of the proposed witnesses identified so far are from South Carolina.[12] But Dan Ryan has not provided evidence that any proposed witnesses would be unwilling to travel to Maryland to testify, nor that any witnesses would suffer hardship by traveling to Maryland. *See Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) ("Defendants, notably, did not submit any affidavits from parties or witnesses stating that they would suffer hardship or inconvenience by having to travel from Washington, D.C. to Baltimore."). Although the Foxbank plaintiffs'

---

[10] The full insurance contracts are not in the record, but neither party contends that they contain a choice of law provision stating that they will be governed by the law of a certain state (whether Maryland or otherwise).
[11] Dan Ryan also cites to *So-Comm, Inc. v. Reynolds*, which stated that the "plaintiff's choice of forum is entitled to less consideration when he is not a resident of the forum district," but that case involved a plaintiff who resided in the proposed transferee forum, so that transfer "would be more convenient for all parties." 607 F. Supp. 663, 666–67 (N.D. Ill. 1985). Here, Clarendon is not a resident of South Carolina, the proposed transferee forum.
[12] Clarendon states that Paul Yeager of Dan Ryan, who signed the covenant not to execute, is a likely witness and lives in Maryland.

lawyer said in his affidavit that the Foxbank plaintiffs have no reason to travel to Maryland, (Aff. of Evans ¶ 13), there are no details regarding hardships they would face, nor is it clear whether their testimony is even necessary for the resolution of this case.  To the extent their testimony is not central to the case, videotaped deposition testimony may be adequate.[13]  *See Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 719 (E.D. Va. 2005).

The court acknowledges that it may be inconvenient for South Carolina witnesses to travel to Maryland.  But the proposed witness Lee Mackin is an employee of DRB SC. "Inconvenience to party-witnesses is given less weight because they are presumed to be more willing to travel to testify than non-party witnesses."  *Laureate Educ., Inc. v. Megahed*, No. CIV.A.AW-10-749, 2010 WL 2651895, at *10 (D. Md. July 1, 2010) (citations omitted); *see also Samsung Elecs. Co.,* 386 F. Supp. 2d at 718.  As to the homeowner's expert, experts generally, "by virtue of their role as paid experts[,] must be prepared to travel to testify and are compensated for doing so." *Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006). There is no indication that the homeowner's expert is unwilling to travel.  Finally, as to arguments about the court's subpoena power, "[m]erely stating that potential witnesses reside beyond a forum's subpoena power does little to assist the court in weighing the convenience of the witness and the necessity of compulsory process." *Samsung Elecs. Co.*, 386 F. Supp. 2d at 719.

The court notes that, while the majority of witnesses appear to be in South Carolina, several considerations cut against giving this factor great weight.  Importantly, there is no specific contention by affidavit that witnesses would be unwilling or unable to travel to Maryland, or that video testimony would not be sufficient.  And at least one key witness, Paul

---

[13] Although the parties completed briefing before the COVID-19 pandemic, the court also considers that in light of COVID-19, there may be a necessity for remote proceedings in any event.

11

Yeager, resides in Maryland. Therefore, the court finds that witness convenience and access weighs only slightly in favor of transfer.

D. Convenience of the parties

According to Clarendon, and not disputed by Dan Ryan, DRB WV is a continuation by statutory conversion of DRB and both are Maryland companies. (Compl. ¶ 4). DRB SC is a South Carolina company. Clarendon is a Texas corporation with its principal place of business in New York. It appears that South Carolina would be equally convenient for Clarendon.

Although Dan Ryan is located in both Maryland and South Carolina, it appears that most of the Dan Ryan witnesses will be from South Carolina. Clarendon and Dan Ryan, however, met in Baltimore, Maryland, on February 29, 2019, and August 5, 2019, in order to discuss Clarendon's coverage position. (Compl. ¶ 68). This indicates that Maryland is a convenient location for both parties to meet. Therefore, the convenience of the parties weighs only slightly in favor of transfer.

E. Interest of Justice

"The 'interest of justice' category is designedly broad. It is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties. Such factors may include, for example, the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment." *Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988) (internal footnotes omitted). The court also considers the "local interest in having localized controversies settled at home." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004) (citation omitted). The court will address only

those "interest of justice" factors identified by the parties: the pendency of a related action, familiarity with applicable law, access to premises that might have to be viewed, and local interest.[14]

Pendency of a related action: While the underlying action is in South Carolina state court, that action does not involve the issue of the scope of insurance coverage. Further, Dan Ryan requests that this be transferred to the U.S. District Court of South Carolina, so it would not be in the same forum as the state court case in any event. This factor is neutral.

Familiarity with applicable law: The contracts at issue appear to be governed by Maryland law. Maryland choice of law rules apply the substantive rules of the place where the contract was made, and "[t]he *locus contractu* of an insurance policy is the state in which the policy is delivered and the premiums are paid." *Cont'l Cas. Co. v. Kemper Ins. Co.*, 173 Md. App. 542, 548 (2007) (citation omitted).[15] Clarendon states the policies at issue were delivered in Maryland and Dan Ryan does not dispute this.[16] (*See* ECF 27, Opp'n at 12; *see also* ECF 29-1, 29-2). A Maryland court will apply Maryland law to the contracts.[17]

There is some uncertainty whether a South Carolina court would apply South Carolina law, given S.C. Code Ann. § 38-61-10, which states "All contracts of insurance on property, lives, or interests in this State are considered to be made in the State . . ." To the extent that § 38-61-10 is a choice of law rule, *see Evanston Ins. Co. v. AJ's Elec. Testing & Serv.,* No. 1:15-CV-01843-JMC, 2016 WL 301171, at *4 (D.S.C. Jan. 25, 2016), a South Carolina court may apply Maryland law. *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d

---

[14] The ability to join parties was addressed *supra*. Since it might be easier for the Foxbank plaintiffs to join if this action is moved to South Carolina, it weighs slightly in favor of transfer.
[15] As noted in note 10, *supra*, neither party contends that the contracts contain a choice of law provision.
[16] Dan Ryan states that not all insureds were in Maryland, (ECF 34, Reply at 6), referring to DRB SC, but there is no indication that the insurance policies were delivered in South Carolina, and the declaration pages indicate the policies were issued to DRB and DRB Enterprises, Inc., both located in Maryland. (*See* ECF 29-1, 29-2).
[17] Neither party addresses the law to be applied to Dan Ryan's counterclaims so the court will not address it here.

581, 600 (4th Cir. 2004) ("[W]hen a lawsuit is transferred from one federal court to another pursuant to 28 U.S.C. § 1404(a), the transferee court is obliged to apply the choice-of-law rules that the transferor court would have applied.").

Therefore, a Maryland court would apply Maryland law to the insurance contracts in this case, and a South Carolina court might do so. While federal courts are accustomed to applying other state's laws, a Maryland federal court is somewhat more familiar with Maryland law. This factor weighs against transfer.

Access to premises: Dan Ryan argues that to view the residences, the parties will need to convene in South Carolina. Dan Ryan, however, does not explain why it is necessary to view the residences to resolve this insurance dispute action. This factor is neutral.

Local interests: Dan Ryan points to S.C. Code § 38-61-10, discussed *supra*, to show South Carolina's interest in adjudicating insurance coverage disputes relating to activities that took place in South Carolina. South Carolina undoubtedly has an interest in this dispute, as the underlying actions for which insurance coverage is sought took place in South Carolina.[18] Clarendon argues that Maryland has an interest in adjudicating coverage of insurance contracts that are issued in Maryland to Maryland companies,[19] with which the court also agrees. This factor appears neutral.

While the issue is close, the court emphasizes that it is Dan Ryan's burden to show that the factors favoring transfer outweigh Clarendon's choice of venue. This it has not done. The court notes that most of the witnesses may live in South Carolina, but Maryland still has

---

[18] Dan Ryan also argues that South Carolina has an interest because this case concerns actions by its attorneys, namely, the alleged breach of the failure to cooperate or failure to consent provision in the insurance contracts. The alleged breach relates to the covenant not to execute. But that was signed by Paul Yeager (who is from Maryland and does not appear to be an attorney) and it appears that Dan Ryan's counsel, who sent the covenant to Clarendon, is located in North Carolina. (ECF 28-1, Letter from deRosset to Yaron).

[19] The policies were issued to DRB Enterprises and DRB, which both listed an address in Frederick, Maryland.

significant connection to this litigation. The insurance contracts were issued in Maryland; DRB/DRB WV is located in Maryland; and Paul Yeager, who may be a key witness due to his role in signing the covenant not to execute, lives in Maryland. Further, that the parties met twice in Maryland to discuss Clarendon's coverage indicates that Maryland is a convenient forum for both parties. But because the relative hardships could be balanced differently at a later point in the case, the denial of the motion to transfer will be without prejudice.

## CONCLUSION

For the reasons stated above, the court will deny the motion to dismiss for failure to join indispensable parties (ECF 15) and deny without prejudice the motion to transfer venue (ECF 16). A separate order follows.

7/17/20
Date

/S/
Catherine C. Blake
United States District Judge